2025 IL App (1st) 231933-U

No. 1-23-1933

Order filed March 7, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 19 CR 0970301 |
| IFEANYI OKORO, | ) ) | Honorable Charles Burns, |
| Defendant-Appellant. | ) ) | Judge, Presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in summarily dismissing defendant's postconviction petition at the first stage of proceedings where his claims were barred by the doctrine of *res judicata* and waiver, and neither trial, posttrial, or appellate counsel were ineffective.

¶ 2    Defendant Ifeanyi Okoro appeals from the trial court's summary dismissal of his postconviction petition that was filed by counsel. He argues that (1) his constructive amendment claim was not barred by the doctrine of *res judicata*, and (2) his trial, posttrial, and appellate

counsel were ineffective for failing to properly raise meritorious issues in the trial court and on appeal. We affirm.

¶ 3                                                BACKGROUND

¶ 4     We have previously detailed the underlying facts of this case in our opinion that disposed of defendant's direct appeal. *People v. Okoro*, 2022 IL App (1st) 201254. As such, we will only discuss those facts that are necessary and relevant to the resolution of this appeal.

¶ 5     Following a jury trial, defendant was found guilty of home invasion, attempted criminal sexual assault, robbery, and unlawful restraint. On October 16, 2019, posttrial counsel filed a motion for new trial, contending that the State failed to prove defendant guilty beyond a reasonable doubt, the trial court erred in denying defendant's motion for a directed verdict on all counts, and the State failed to prove every material allegation of the information beyond a reasonable doubt. In an amended posttrial motion filed on December 12, 2019, defendant additionally contended that the trial court erred by ordering the exclusion of evidence regarding the victim's prior sexual assault allegations, and the State failed to note sufficient facts in the record for the jury to find defendant guilty beyond a reasonable doubt on any of the charges. On February 14, 2020, posttrial counsel filed a second amended motion for new trial which claimed that the rape shield statute did not preclude the introduction and cross-examination of a rape victim regarding prior accusations of rape. Defendant's motion for new trial was denied and he was sentenced to concurrent sentences of 11 years for home invasion, seven years for robbery and seven years for attempted criminal sexual assault.

¶ 6     On October 29, 2020, defendant filed his direct appeal, contending that (1) his rights under the grand jury clause of the fifth amendment were violated because the evidence at trial and the

jury instructions constructively amended the indictment and (2) he was denied his constitutional right to cross-examine the complainant and present his theory of defense. *Id*. ¶ 1. We affirmed in an opinion filed on March 31, 2022, finding that there was no fatal variance between the indictment, evidence presented at trial, and the jury instructions as the indictment apprised him of the offense of home invasion as found in the statute, thereby failing to satisfy any part of the test for determining variance. *Id*. ¶ 41. We also concluded that the trial court did not abuse its discretion in refusing to allow cross-examination of the complainant based on her excited utterance that she was previously raped, and that the statement was barred by the rape shield statute. *Id.* ¶ 60. We specifically found defendant's theory that a prior rape would make complainant hypersensitive to be pure conjecture and therefore irrelevant to the issue of whether defendant committed the offense of attempted criminal sexual assault; moreover, defendant did not make an offer of proof in the trial court regarding the relevance of the evidence, thus he was unable to prove its relevance without supporting evidence validating his theory. *Id.*

¶ 7    Defendant subsequently filed a postconviction petition on June 26 and 30, 2023, requesting that his conviction be vacated and a new trial granted because (1) his due process rights were violated when his indictment was constructively amended; (2) his right to confrontation was violated by being unable to cross-examine his accuser with her claim that she had been raped before; (3) trial counsel provided ineffective assistance of counsel for promising testimony that could only come from defendant, but then advised defendant not to testify; (4) trial, posttrial, and appellate counsel were ineffective for failing to properly raise his due process claim; (5) trial, posttrial, and appellate counsel were ineffective for failing to properly raise his Sixth Amendment claim; (6) appellate counsel was ineffective for failing to raise the claim that trial and posttrial

counsel were ineffective; and (7) he was prejudiced by the cumulative claims of ineffectiveness. Defendant also raised a claim concerning correction of the mittimus.

¶ 8     In a written order on September 21, 2023, the trial court denied defendant's postconviction petition. The trial court concluded that defendant's constructive amendment claim failed because the appellate court already found there was no fatal variance between the indictment, evidence presented at trial, and jury instructions. The appellate court found that the indictment apprised him of the offense of home invasion consistent with the statute which details three ways in which a person can commit home invasion, thus any variance between the indictment and the evidence at trial was not fatal.. Because this court had already determined that there was no fatal variance or constructive amendment, the trial court declined to diverge from this court's findings and concluded that the claim was frivolous and patently without merit. Regarding defendant's sixth amendment claim that he was prevented from cross-examining the victim about an alleged prior rape and that the victim was "hypersensitive" due to her prior sexual assault, the trial court found that this court addressed this issue on defendant's direct appeal and rejected it. The trial court declined to diverge from this court's findings and concluded that defendant's claim was frivolous and patently without merit. With respect to defendant's claims that trial counsel was ineffective for failing to (1) raise the due process violation regarding the constructive amendment to the indictment or, in the alternative, an improper variance between the indictment and proof at trial; (2) raise the confrontation clause violation where defendant was unable to cross-examine the victim on an alleged prior rape and properly put on a defense at trial; and (3) for promising the jury during opening statements defendant would testify then advising defendant not to testify.

¶ 9    The trial court found the first two claims were patently without merit as they were considered on appeal. Regarding trial counsel's promise during opening statements that defendant would testify, the trial court noted that trial counsel did not make specific references to the jury hearing from defendant himself; instead, he merely alerted the jury to what he believed the evidence would show including how there was no threat of physical harm toward her and she was never seen running on the surveillance video. The court found that such supposed evidence could have either been elicited on cross-examination of witnesses or through the surveillance video itself and did not necessarily have to come from defendant. The court also noted that trial counsel made no specific promise that defendant would testify. The trial court concluded that defendant's claims that trial counsel was ineffective were frivolous and patently without merit. With respect to defendant's claim of posttrial counsel's ineffectiveness for failing to raise the above-referenced issues, the trial court found that it could not be said that posttrial counsel was objectively unreasonable or that this court would have reversed defendant's conviction based on the alleged errors. With respect to defendant's claims that appellate counsel was ineffective for failing to raise those same issues, the trial court found that two of those issues were already addressed and rejected by this court and one was already deemed frivolous and patently without merit in reviewing the postconviction petition. As such, the trial court concluded that defendant's claim that appellate counsel was ineffective was frivolous and patently without merit. Finally, the trial court corrected the mittimus.

¶ 10    Defendant filed his timely notice of appeal on October 16, 2023.

¶ 11                                ANALYSIS

¶ 12    On appeal, defendant contends that his postconviction petition should not have been dismissed because  (1) his constructive amendment claim was not barred by the doctrine of *res judicata*, and his trial, posttrial and appellate counsel were ineffective for failing to properly raise meritorious issues in the trial court and on appeal.

¶ 13     The Post-Conviction Hearing Act (Act) provides a means for individuals serving criminal sentences to assert that their convictions resulted from a substantial denial of their constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2022); *People v. Williams*, 2024 IL 127304, ¶ 14. Postconviction proceedings are commenced by the filing of a petition, which must, among other things, "clearly set forth the respects in which the petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2022).

¶ 14    The Act sets forth a three-stage process for adjudicating petitions. *Williams*, 2024 IL 127307, ¶ 15. Defendant's petition, which was drafted by counsel, was summarily dismissed in a written order at the first stage, which sets a low threshold and requires only a limited amount of detail in the petition as most petitions are usually drafted at this stage by *pro se* defendants. *Id.* For that reason, a *pro se* defendant must only state the "gist" of a constitutional claim by alleging enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Id.* The "gist" of a constitutional claim means the petition meets the pleading requirements of section 122-2, even if the petition lacks formal legal arguments or citations of legal authority. *Id.*

¶ 15    Once a defendant files a petition for postconviction relief, the trial court may, during this first stage of proceedings, enter a dismissal order within 90 days if it finds the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2022). If the trial court does not dismiss the petition at the first stage, it advances to the second stage, where counsel may be appointed to

an indigent defendant, and where the State shall file a motion to dismiss or an answer to the petition. 725 ILCS 5/122-2.1(b), 122-4 (West 2022). To advance from the second stage to the third stage of proceedings, the amended petition must make a substantial showing of a constitutional violation. *People v. House*, 2020 IL App (3d) 170655, ¶ 28.

¶ 16 Here, the trial court dismissed defendant's postconviction petition at the first stage, albeit in a written order with explanation rather than summarily. Upon review of the court's first-stage dismissal, we examine whether the defendant's petition sets forth the gist of a constitutional claim. *People v. Palmer*, 2017 IL App (4th) 150020, ¶ 16. A claim completely contradicted by the record is an example of an indisputably meritless legal theory appropriately dismissed at the first stage of postconviction proceedings. *Id*. Our review is *de novo*.

¶ 17 A. Constructive Amendment of the Indictment

¶ 18 We first examine defendant's first argument that his constructive amendment claim was not barred by *res judicata*. The purpose of a postconviction petition is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal. *People v. Johnson*, 352 Ill. App. 3d 442, 447 (2004). Thus, *res judicata* bars consideration of issues that were raised and decided on direct appeal, and issues that could have been presented on direct appeal, but were not, are considered waived. *Id.*

¶ 19 A review of our disposition on defendant's direct appeal, as noted above, reveals that defendant claimed that his rights under the fifth amendment were violated because the evidence at trial and the jury instructions constructively amended the indictment. In his postconviction petition, defendant claimed that his due process rights under the fourteenth amendment were violated when his indictment was constructively amended. Both claims were based on facts

ascertainable from the record, and defendant could have easily raised a fourteenth amendment claim along with his prior fifth amendment claim as they are born out of the same facts. Thus, his claim is waived as it could have been raised on direct appeal and was not.

¶ 20    Moreover, in defendant's direct appeal, we found that there was no fatal variance between the indictment, evidence presented at trial, and the jury instructions as the indictment apprised him of the offense of home invasion as found in the statute, and that defendant failed to satisfy any part of the test concerning the sufficiency of the home invasion indictment. *Okoro*, 2022 IL App (1st) 201254, ¶ 41. We specifically rejected defendant's claim that there was a constructive amendment of the indictment. *Id.* ¶ 45. Defendant's allegations in his postconviction petition suggest a slight variation to a previously raised claim in order to avoid the bars of waiver and *res judicata*. Previously litigated issues cannot be reopened through the subsequent addition of more allegations. *People v. Sims*, 192 Ill. 2d 348, 360 (2000). We have previously addressed defendant's claims concerning a constructive amendment of the indictment based on a variance between the indictment, the evidence presented at trial and the jury instructions. Accordingly, we find that this issue is also barred by *res judicata*.

¶ 21    We therefore conclude that consideration of defendant's claim that there was a constructive amendment of the indictment, under any constitutional amendment, was barred by both waiver and *res judicata* and therefore was properly dismissed by the trial court as frivolous and patently without merit.

¶ 22                         B. Ineffective Assistance of Counsel

¶ 23    Defendant next argues that his trial, posttrial, and appellate counsel were ineffective for failing to raise and preserve various meritorious issues in the trial court and on appeal, and that the

trial court erred in summarily dismissing his claims. A claim of ineffective assistance of counsel is evaluated under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to survive summary dismissal at the first stage of postconviction proceedings, the defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that but for counsel's deficient performance, there is a reasonable probability that outcome of the proceedings would have been different. *Id.* at 687. A defendant must satisfy both prongs of the *Strickland* test or the claim must fail. *Id.* at 697.

¶ 24    Defendant's claims of ineffective assistance involve (1) trial counsel's failure to allow him to testify after promising the jury that it would hear defendant's side of the story in the defense's opening statement; (2) counsels' collective failure to raise his fourteenth amendment challenge to the constructive amendment of the indictment; (3) counsels' collective failure to properly raise the claim that defendant's right to confrontation and right to preserve a defense were violated; and (4) appellate counsel's failure to raise the issue of trial and posttrial counsel's ineffectiveness.

¶ 25    Here, we have already found that defendant's  claim regarding the constructive amendment of the indictment is barred (claim number 2) by both waiver and *res judicata*. It follows then that neither trial, posttrial, nor appellate counsel were ineffective for failing to raise this meritless argument as it would not have changed the result of defendant's conviction or appeal. Therefore, defendant cannot establish the second *Strickland* prong. We therefore reject defendant's claims that any of his prior attorneys were ineffective for failing to raise a fourteenth amendment due process claim regarding the constructive amendment of the indictment.

¶ 26    A similar conclusion is reached regarding defendant's claim that the trial court erred in dismissing his postconviction claim that his sixth amendment right to confrontation and right to

preserve a defense (claim 3) were violated for several reasons. First, we find that posttrial counsel and appellate counsel cannot be considered ineffective for failing to raise this issue because it was raised on direct appeal by appellate counsel, thus it is barred by *res judicata*, and further, we addressed the merits of this issue on defendant's direct appeal despite defendant's forfeiture of the issue by failing to raise it in his posttrial motion, thus defendant cannot show prejudice by posttrial counsel's failure to raise the issue in the motion.

¶ 27 We also find that trial counsel was not ineffective for how this issue was handled in the trial court. On direct appeal, we addressed the issue under an exception to the forfeiture rule. *Okoro*, 2022 IL App (1st) 201254, ¶ 55. Defendant argued that he was denied his constitutional rights to cross-examine complainant and present his theory of defense because the trial court invoked the rape shield statute to bar questioning of complainant concerning an alleged prior rape that defendant argued made her "hypersensitive." We note that defendant raised the exact issue in his postconviction petition and again in this appeal.

¶ 28 On direct appeal, we rejected defendant's general theory that a prior rape would make complainant hypersensitive as pure conjecture and therefore irrelevant to the issue of whether this defendant committed the offense of attempted criminal sexual assault. *Okoro*, 2022 IL App (1st) 201254, ¶ 60. We further noted that defendant failed to make an offer of proof with specific and detailed information about why and how such information was relevant as was required by statute. *Id.* at ¶ 59. We further noted, citing *People v. Sandifer*, 2016 IL App (1st) 13397, ¶ 23, that the victim's sexual history is not constitutionally required to be admitted unless it would make a meaningful contribution to the fact-finding process. *Id.*, ¶ 55.

¶ 29    While defendant could arguably make a claim that trial counsel was ineffective for failing to make such an offer of proof, he has not made such an argument, and even if he had done so, it would fail.

¶ 30    A review of defendant's arguments establishes that they are merely an attempt to relitigate this issue in his postconviction proceedings, without providing any additional facts or evidentiary support for his constitutional claims. Specifically, defendant has not provided any additional or specific evidence in either his petition or affidavit regarding the relevancy of this information that could have defeated the rape shield statute's bar of such information under the "constitutionally required" exception. Rather, he only restates the same arguments made in the trial court and on direct appeal, namely that his defense was compromised by invocation of the rape shield statute to block portions of his cross-examination of the complainant, to now support his ineffectiveness claims. Defendant's attempt to relitigate the issue raised on his direct appeal framed as an ineffective assistance argument does not state the gist of a constitutional claim.

¶ 31    Nor can defendant successfully argue that trial counsel's behavior was objectively unreasonable in how he argued the issue before the trial court. As we noted on direct appeal, trial counsel made general, speculative statements about why and how complainant's statement to police regarding a prior rape would be relevant to defendant's case, including her hypersensitivity to being alone with a man. *Okoro*, 2022 IL App (1st) 201254, ¶ 59. Defendant repeated those same general and speculative statements in his postconviction petition and in this appeal. We can infer that no additional specific and detailed facts were available to trial counsel to meet the exception, which is why they were not presented in an offer of proof, nor are any available to defendant or postconviction counsel as they were not presented in the petition or by affidavit. It follows then

that trial counsel could not be ineffective for failing to present nonexistent evidence to support this claim, and the trial court properly dismissed this argument as frivolous and patently without merit.

¶ 32 Defendant's remaining claim of ineffective assistance is based on trial counsel's failure to allow him to testify after promising the jury that it would hear defendant's side of the story, during the defense's opening statement (claim number 1). We find that such claim misrepresents and is directly refuted by the trial record. The trial court must accept as true all well-pleaded allegations in the postconviction petition unless the allegations are positively refuted by the record. See *Palmer*, 2017 IL App (4th) 150020, ¶ 21.

¶ 33 A review of the defense's opening statement reveals, as noted by the trial court and in defendant's postconviction petition, that trial counsel stated as follows:

> "* * * When Mr. Okoro came out of the restroom, I believe the evidence will show approximately two minutes later, things had changed. That dynamic that he thought he had communicating with Miss B[.] wasn't there anymore. She became loud towards him. She yelled at him. She cussed at him, called him names and became belligerent. He was completely thrown off as to why.

> "There will be evidence and testimony that he didn't believe she was intoxicated. Neither was he because neither one of them were consuming alcohol together. He didn't understand what was going on and attempted to talk to her. There was no overt action or threat of physical harm or actual physical harm once he was out of the bathroom.

> I submit the evidence will show that there was absolutely no attempts of physical harm by Mr. Okoro to Miss B[.] whatsoever. None.

> * * *

You will see absolutely no evidence of her running anywhere within the condominium building at all. None. * * *

You will hear evidence that my client never walked back into the condominium unit again after she walked out."

¶ 34    Contrary to defendant's arguments, counsel did not "very clearly promise the jury that it would hear testimony that could only come from [defendant]." Counsel stated that the evidence would show certain things, and that the evidence included video surveillance footage.

¶ 35    Further, the record shows that prior to discussions about jury instructions, the trial court inquired whether defendant would be testifying. He first asked trial counsel whether defendant would testify and counsel replied that he was not going to testify. The trial court then admonished defendant that it was his decision whether or not to testify and defendant replied that he understood. The trial court then stated it was not a decision made by his attorney and indicated that it would ask him some questions later but reiterated that defendant had a right to testify. Defendant stated that he understood.

¶ 36    Additionally, prior to closing arguments and outside the presence of the jury, the trial court conducted *voir dire* of defendant concerning trial counsel's decision not to call any witnesses, whether he talked with trial counsel about whether or not he wanted any witnesses called. Defendant responded that he spoke with trial counsel about it and agreed with the decision not to call any witnesses. The trial court then admonished defendant again that he had the right to testify and that it was his sole decision and defendant replied that he understood. The trial court also told defendant that by resting the defense at that time, he would not be testifying in the case and defendant replied that he understood. The trial court then asked defendant whether he understood

that he could testify and that no one could prohibit him from testifying and defendant responded that he did. The trial court asked defendant directly whether he wanted to testify, and defendant stated that he did not. The trial court then asked defendant whether he made that decision after talking to his attorney in this matter and if he discussed his decision of whether or not to testify, and defendant replied yes to both questions. The trial court then asked defendant whether he understood that his attorney could not prevent him from testifying; if the attorney said no and defendant said yes, the court stated that defendant would be allowed to testify. Defendant replied that he understood. The court asked him again whether he wanted to testify or not and defendant stated that he did not. The trial court then stated that "[d]efendant's been *voir dired* with regard to the right to call witnesses and right to call - - and his right to testify in this matter, okay?"

¶ 37    Accordingly, because defendant's allegation that trial counsel provided ineffective assistance of counsel by refusing defendant his right to testify is positively refuted by the record, we conclude that the trial court properly dismissed this issue as frivolous and patently without merit. It follows then that defendant's claims that posttrial and appellate counsel were ineffective for failing to raise this issue are also without merit.

¶ 38    We conclude that all the claims raised in defendant's postconviction petition are frivolous and patently without merit and were properly dismissed at the first stage of postconviction proceedings.

¶ 39                              CONCLUSION

¶ 40    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.