**The People of the State of Illinois, Plaintiff-Appellee, v. Gilmer McDonald, Defendant-Appellant.**

**Gen. No. 50,129.**

First District, Fourth Division.
September 24, 1965.

Allan S. Ganz, of Chicago, for appellant.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney of Cook County, of Chicago, Fred G. Leach, Assistant Attorney General, Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

In a bench trial defendant was convicted of murder and on November 17, 1961 he was sentenced to a term

475

of twenty years.[1] On writ of error, review was sought in the Supreme Court which has transferred the case to this court.

The facts are essentially undisputed, and the sole point raised by defendant is that he should have been found guilty of voluntary manslaughter only.

In 1961 defendant was 47 years old. He had been living with Babe Butler for some 25 years. He testified that he loved her. She was 4'9" tall and was 84 years old.

Shortly after midnight on August 12, 1961 defendant and three coworkers at the steel plant finished work for the day. On the way home in a car they consumed some whiskey and beer. Defendant invited the others to indulge in more of the same at his apartment and they accepted. When they arrived there at about 12:40 a. m. there were no lights on in the apartment. Upon turning on the light, defendant saw Babe in bed and one Fat standing at the foot of the bed. Both were fully clothed. Defendant was acquainted with Fat but did not know him by any other name.

Defendant proceeded to get out a half-pint bottle of whiskey. He then told his friends to go into the breakfast room where they resumed their drinking. Fat, exhibiting either a high degree of savoir faire or, as argued by defendant, extreme effrontery, asked defendant for a cigarette. Being told by defendant that he didn't have any, Fat departed from the premises. As he was leaving, Miss Butler said to him, "Stop in, come back."

---

[1] This case is not governed by the 1961 Criminal Code nor by the 1963 Code of Criminal Procedure except that defendant has asked this court to exercise its authority under the latter code to reduce the offense to voluntary manslaughter and impose a lesser sentence appropriate to that crime. Ill Rev Stats (1963), c 38, § 121–9(b)(3)(4). See also § 125–3(b)(c).

The supply of whiskey was exhausted by 1:05 a. m. so defendant and friends walked to a nearby tavern where they stayed until it closed at 2:00 a.m. They then went to a "chicken shack" and ate some fish and chips. From there they walked back to defendant's apartment shortly before 4:00 a. m. The three friends got in their car and left.

Defendant saw a light on his porch. When he walked in, Fat walked out and said, "I'll see you all." Babe was in bed with her nightgown on. Defendant asked her what was going on. She replied something which he didn't understand. He got a gun from the kitchen, filled it with cartridges, and asked her the same question again. Sitting on the side of the bed, she again replied, but her answer was still unintelligible to defendant, so he shot her in the face, the chest, and through the arm. Another bullet hit the bed and two others were buried in the wall. Defendant got a wet towel from the kitchen and wiped Babe's face. He "noticed she was dead."

Defendant was so upset he was unable to call the police. He knocked on a neighbor's door, told him that he had killed Babe, and asked him to phone the police. The neighbor inquired of defendant if he was drunk, but defendant told him that he was not.

The police arrived in a short time and were told by defendant, "I done killed Babe." They confirmed that she was dead, and found six expended shells in the revolver which was on top of the oil stove. Defendant identified the gun as the one he had used to shoot Babe. (Ballistics tests later confirmed this fact.) One of the police officers testified that defendant "seemed normal, not like he was drinking." Defendant was arrested and taken to the Criminal Court building where he gave a written statement setting forth the pertinent facts as outlined above.

At the trial defendant's counsel stated that defendant "admits the facts of the charge and, in effect is pleading nolo contendere to the charge of murder but would plead guilty to voluntary manslaughter." His offer was not accepted and the trial proceeded on a plea of not guilty to the indictment which charged murder only.

Murder and voluntary manslaughter were defined in Chapter 38 of the Illinois Revised Statutes (1959) as follows:

§ 358. *Murder*

Murder is the unlawful killing of a human being, in the peace of the people, with malice aforethought, either expressed or implied. The unlawful killing may be perpetrated by . . . shooting, or by any other of the various forms or means by which human nature may be overcome, and death thereby occasioned. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.

§ 361. *Manslaughter defined*

Manslaughter is the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever. It must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, or involuntary in the commission of an unlawful act, or a lawful act without due caution or circumspection.

## § 362.  *Manslaughter, voluntary*

In cases of voluntary manslaughter, there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should appear to have been an interval between the assault or provocation given, and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and punished as murder.

One other section of the statute is also pertinent. It reads:

## § 373.  *Burden of proof*

The killing being proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide.

Defendant's contention is that his finding of Babe and Fat in "compromising circumstances," the effrontery of Fat in asking for a cigarette, Babe's telling Fat to come back, defendant's drinking, and his finding Fat at the apartment a second time in a "compromising situation," all combined to demonstrate the absence of malice in the killing.

Defendant has cited four cases all of which resulted in new trials or convictions for a crime less than first

479

degree murder. Each, however, involved factual situations which we consider distinguishable from the case at bar. In People v. Jones, 384 Ill 407, 51 NE2d 543, a wife stabbed her husband to death upon finding him in a tavern with another woman. On an earlier occasion the two women had engaged in a knife fight. The court refused to upset a jury verdict of manslaughter. Canister v. State, 46 Tex Crim 221, 79 SW 24, was a case in which a husband shot another man on being informed of adulterous conduct between the latter and defendant's wife. In Smith v. State, 174 Ga 878, 164 SE 762, a husband killed his wife immediately after he was told by one Doodlefinger that he had seen defendant's wife in the act of adultery. Haddock v. State, 129 Fla 701, 176 So 782, involved defendant's killing of a man who he learned had engaged in sexual relations with defendant's 15-year-old daughter.

■ ■ To apply the principles of these cases to the facts of the instant case would be to misread the Illinois statutes quoted above. In the first place we do not think that the facts in evidence disclose the "compromising situation" which defendant uses as the base for his argument. Beyond that, however, we are aware of no case which applies the exculpatory features of *crime passionel* to the killing of a mistress, regardless of the duration of the relationship. We will not do so in this case.

The judgment and sentence of the Criminal Court are affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.