The appellant, Gail Turner, was found guilty of murder and was sentenced to 25 years in the penitentiary. Evidence at trial tended to show that the appellant had lived with James "Bones" Stephens continuously for two and one-half years. On June 22, 1995, Stephens and Lester "Hippie" Cockerham, a co-employee and neighbor of the appellant and Stephens, went out for the evening. Cockerham lived in apartment 121 of the Courtyard Apartments and the appellant and Stephens lived in apartment 79 of the same complex. Cockerham picked Stephens up at his apartment and the two went to Jimmy's, a nightclub in Huntsville, before going to New Country, a nightclub in Decatur. While at New Country, Stephens met a female whom he knew, Cindy Adams. Later that night, Stephens and Adams both went with Cockerham to his apartment. Cockerham mentioned that it was late and he had to work the next morning, so he went to bed, instructing the other two to lock the door when they left. Stephens and Adams got beers, turned off the lights, placed pillows on the floor and started kissing. Stephens had removed Adam's blouse.
The appellant, meanwhile, waited for Stephens to return to their apartment. After noticing, around 2:00 a.m., that Cockerham's truck was parked in the parking lot, she walked to Cockerham's apartment. The appellant began banging on the door, and when no one came to answer, she screamed, "I know you are in there" and "open the door." When Stephens finally answered the door, she yelled, "I can't believe you're with a bitch like this." She started cursing and screaming for two to five minutes, calling Stephens a "sorry motherfucker" and a "son-of-a-bitch." Stephens did not raise his voice or appear to be angry. The appellant left the apartment and started walking outside; Stephens followed her outside. According to the appellant, Stephens said something to her, she turned around, and they "struggled." She said the next thing she knew, he was on the ground. She said she remembers that she did not have a gun when she left Cockerham's apartment, but does not recall where the gun that killed Stephens came from.
According to Cockerham, the appellant came back into the apartment about 5 to 10 minutes after the yelling had stopped and said, "I shot Bones. I shot Bones." The door to the apartment was only cracked open when the shooting occurred, and Adams and Cockerham had both been inside the apartment; there were no eyewitnesses to the struggle and the shooting. After the appellant went back into the apartment and laid the gun on a counter, Cockerham told her to "get that damn gun and get it out of here." She ran back across the apartment complex and put the gun in her apartment. She then met Cockerham where Stephen's body was lying on the ground. The appellant repeatedly asked Cockerham to "[h]elp him," "[c]all 911" and "[d]o something." Cockerham then ran back into his apartment, where Adams handed him the telephone after she dialed the 911 emergency number.
When the police arrived, the appellant recounted to Officer Mike Shealy that she and Stephens had gotten into a fight over some problem, and that while they were fighting over a weapon the weapon discharged, striking Stephens. The appellant was sobbing and remained beside Stephen's body until it was removed from the scene. Stephens died as the result of a gunshot wound to the mouth. The appellant was later indicted for murder; and she pleaded not guilty. At trial, the judge instructed the jury regarding the elements of murder, reckless manslaughter, criminally negligent homicide, and accident, but refused to instruct the jury on heat-of-passion manslaughter.
The appellant contends that her conviction for murder is due to be reversed and a new trial granted because, she says, the trial court committed reversible error by *Page 234 
refusing her requested jury instruction on the lesser included offense of heat-of-passion manslaughter set forth in § 13A-6-3,Code of Alabama 1975.[1] Anyone charged with a greater offense has the right to have a charge on any lesser offenses when there is a reasonable theory based upon the evidence to support the accused's position. Anderson v. State, 507 So.2d 580, 582
(Ala.Cr.App. 1987). The trial court may refuse to charge on such a lesser included offense only when: (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense; or (2) the charge would tend to mislead or confuse the jury. Holladayv. State, 549 So.2d 122 (Ala.Cr.App. 1988). The sole issue in this appeal is whether there is a reasonable theory based upon the evidence to support the theory that the appellant killed Stephens out of heat of passion caused by provocation recognized by law.
Section 13A-6-3, Code of Alabama 1975, specifies that, in order to reduce murder to manslaughter, the heat of passion must have been caused by a provocation recognized by law. Alabama courts have acknowledged such legal provocation in only two circumstances: (1) when the accused catches his/her spouse in the act of adultery; and (2) when the accused has been assaulted or was faced with what appeared to be an imminent assault. Hill v. State, 699 So.2d 974 (Ala.Cr.App. 1997). The appellant contends that both circumstances were present in this case and that, therefore, the heat of passion was the result of a provocation legally sufficient to reduce her murder conviction to manslaughter. However, although there was evidence that the killing resulted from heat of passion, the evidence does not support the contention that either circumstance of a legally sufficient provocation was present in this case.
The evidence at trial showed that the appellant immediately became enraged when she discovered Stephens "kissing and fondling" Ms. Adams. While this situation appears comparable to the circumstance of catching a spouse in the act of adultery, Alabama courts have required that, for heat-of-passion manslaughter to be available, the party caught by the accused having a sexual or romantic relationship with another must actually be the spouse of the accused. This court has previously refused to expand the definition of legal provocation in a case where the accused caught the mother of his child having a sexual relationship with another, because the accused was not married to the woman. Harrison v. State,580 So.2d 73, 74 (Ala.Cr.App. 1991). Likewise, other jurisdictions have not expanded legal provocation to include instances involving the killing of a mistress, regardless of the duration of the relationship. People v. McDonald, 63 Ill. App.2d 475, 212 N.E.2d 299 (1965). Thus, the accused must be married to one of the parties caught in the compromising situation before the killing of either party can be reduced to manslaughter.
The appellant contends on appeal that her relationship with Stephens could be considered a common law marriage "based on their relationship of continuously living with each other for two and a half years." Appellant's brief, p. 11. The elements of a valid common law marriage are: (1) capacity; (2) present agreement or mutual assent to enter into relationship, permanent and exclusive of all others; (3) public recognition of the existence of a marriage; and (4) cohabitation or mutual assumption openly of marital duties and obligations. Adams v.Boan, 559 So.2d 1084 (Ala. 1990). However, the evidence presented at trial forecloses the possibility that the second element was fulfilled and that a common law marriage existed.
The evidence indicated that, not only was appellant's relationship with Stephens not "exclusive of all others," but that she and Stephens had never entered into any *Page 235 
agreement to form such a relationship. It was undisputed that Stephens was legally married to another woman when he first met the appellant and that he was married to that other person when he was killed. According to the Alabama Supreme Court, where one of the parties is married when the new relationship begins, a common law marriage will be recognized only when there is a change in the previous relationship, such as divorce or death.Aaberg v. Aaberg, 512 So.2d 1375 (Ala. 1987). Because there is no evidence that Stephen's previous marriage had ended by the time of his death, the appellant's relationship with Stephens cannot be recognized as a common law marriage.
The appellant's testimony at trial only reinforced the conclusion that no common law marriage existed, and it demonstrated that the appellant was not even under the impression that a common law marriage existed. She testified that, although Stephens referred to his wife as his "ex-old lady," she "didn't know for sure that he was actually still married to this woman." When she was asked by her trial attorney to describe her relationship with Stephens at the time of the killing, the appellant testified that she and Stephens loved each other, that the relationship was "wonderful" and was like "almost living in a fairy tale." However, at no point did the appellant or any other witness testify that she and Stephens were parties to a common law marriage. There was simply no basis from which the jury could infer that a common law marriage existed under the circumstances presented here.
The appellant next contends that a jury instruction on heat of passion was justified because, she says, she was either assaulted or an assault appeared to her to be imminent. These circumstances, if supported by the evidence, would also justify a heat-of-passion charge. The Alabama Supreme Court stated inReeves v. State, 186 Ala. 14, 16-17, 65 So. 160, 161 (Ala. 1914):
 " 'Manslaughter is the unlawful killing of a human being without malice; that is, as the unpremeditated result of passion-heated blood — caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than an assault, either actually committed, or menaced under such pending circumstances as reasonably to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given.' "
However, the appellant's theory that Stephens was killed as a result of the heat of passion caused by his assault on her or threatened assault on her is problematical. In fact, no evidence in the record suggests that the appellant was ever aroused to the heat of passion by imminent assault. The heat of passion was aroused in the case only when the appellant discovered Stephens with Ms. Adams.
While the language in Reeves anticipates affirmative action in response to the assault or threatened assault, the appellant's argument at trial was based on the theory that the shooting was an accident. According to the testimony of Officer Shealy, which the appellant relied upon heavily on appeal:
 "[The appellant] said that she and the victim had gotten into a fight shortly before our arrival. They had gotten into a fight over some type of problem they had between themselves, and they had began [sic] fighting over a weapon. During the fight over the weapon, the weapon went off and the victim was struck."
The appellant asserts that from this testimony it can be inferred that Stephens threatened an assault on the appellant by carrying a gun when they left Cockerham's apartment, and that he pointed it at the appellant. However, the appellant admitted that Stephens was not even angry at the time. Without more, there is no way to infer that heat of passion played any role in the shooting. The appellant's own testimony, likewise, does not create any inference that she was affected by heat of passion caused by an imminent assault. She testified: "[Stephens] was behind me. He said something, and I turned around and we struggled. And the next thing I knew he was on the ground." This testimony, together with her testimony that *Page 236 
Stephens was not angry, supports the theory that the shooting resulted from accident or recklessness, but not from heat of passion.
The appellant correctly argues that heat-of-passion manslaughter and reckless manslaughter are not always inconsistent. In Anderson v. State, 507 So.2d 580, 583
(Ala.Cr.App. 1987), this court held that charges on both heat-of-passion manslaughter and reckless manslaughter were justified by the evidence. However, in that case, Anderson fired several rounds of buckshot into a mobile home, striking and killing his wife. Id. at 583. Unlike the shooting in the present case, Anderson's continuous firing of the gun consisted of affirmative, reckless acts taken as the result of heat of passion, Under the appellant's argument that she was reacting to an imminent assault by Stephens, the gun discharged accidentally while they were struggling over the gun, rather than as the result of any affirmative act. Whereas heat of passion can be inferred from affirmative acts, whether purposeful or reckless, the concept that an accident can result without any affirmative act and yet be precipitated by heat of passion is illogical.
No evidence in the record — either Officer Shealy's testimony, the appellant's testimony, or any other witness's testimony — indicates that the appellant made any affirmative response to a threatened assault by the deceased. The appellant testified merely that after the struggle over the gun, "the next thing I knew he was on the ground." No other witness testified as to how the struggle and shooting took place. The evidence does not support the theory that the appellant shot Stephens out of heat of passion aroused by Stephen's threatened assault. The trial court properly refused to charge the jury on heat-of-passion manslaughter. The judgment is affirmed.
AFFIRMED.
All Judges concur.
[1] Pursuant to § 13A-6-3, manslaughter occurs in the following circumstances: "(a) A person commits the crime of manslaughter if: (1) He recklessly causes the death of another person, or (2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."