NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240484-U

NO. 4-24-0484

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 22, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Knox County |
| JONATHAN I. KELLY, | ) | No. 18CF176 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Andrew J. Doyle, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: As no issue of arguable merit could be raised on appeal, appointed appellate counsel's motion to withdraw is granted and the trial court's judgment is affirmed.

¶ 2    Defendant Jonathan I. Kelly appeals from the summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. However, OSAD has now filed a motion seeking to withdraw from defendant's representation because it can identify no non-frivolous issue to raise on appeal. We agree, and we therefore grant OSAD's motion to withdraw and affirm the dismissal of defendant's petition.

¶ 3    I. BACKGROUND

¶ 4    The State charged defendant with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2022)) and one count each of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)) and unlawful possession of a weapon by a felon (UPWF) (*id.* § 24-1.1(a)).

Regarding the first degree murder charges, the indictment alleged that defendant personally discharged a firearm. All charges related to the April 1, 2018, shooting death of Jenni McGruder outside of a Galesburg, Illinois pub.

¶ 5        The facts relating to defendant's convictions have been set forth and analyzed in a prior appeal. *People v. Kelly*, 2022 IL App (3d) 190375-U. Accordingly, we only discuss the facts necessary to resolve this appeal and borrow from recitations in the previous disposition.

¶ 6                                    A. Trial

¶ 7        The trial testimony established that on April 1, 2018, the victim, Jenni McGruder, left a pub in Galesburg, Illinois, with her husband Michael McGruder and a friend, Quincy Morrison. The three were walking to Morrison's car when Michael heard two or three gunshots behind him. He ducked and went to the ground. After realizing he was unharmed, he saw Jenni lying on her stomach; she had sustained a fatal gunshot wound to the head. As Michael was standing over his wife, the shooter ran past him with a dark colored handgun on his "right side." Michael said the person deliberately displayed the gun toward him, "sort of like taunting [him] with it."

¶ 8        Morrison testified he observed a commotion outside of the pub. He did not recognize anyone involved, and defendant was not part of the group. However, Morrison overheard someone involved say they were going to get a gun "and shoot the place up." He decided to leave the pub and tried to get everyone with him to leave. According to Morrison, he and Jenni began walking toward his car when he heard tires squealing. When he turned around, he saw "sparks come flying from a gun" and heard three gunshots.

¶ 9        Morrison said he saw a van "where the shots came from," so he ducked and began running toward his car. After he arrived at his car, Morrison saw an individual he identified as

defendant, who he knew from playing basketball together, run past. Morrison said he made eye contact with defendant and then began yelling at him as he ran by. He said defendant was wearing light-colored clothing and "was trying to cuff a gun into his pocket or his waistband." Although Morrison said he did not see a gun or see defendant shooting a gun, he did see defendant putting something into his right-side pocket or waistband.

¶ 10    Leonard McGee, a prior felon who was on probation, testified that he had known defendant for approximately two years prior to the shooting. On the night of the shooting, McGee observed a fight between defendant and Garret Mixon at the pub, after which defendant left. McGee also left the pub but received a call from defendant telling him to return because associates of Mixon were trying to fight an associate of theirs called "Sko." McGee returned and as he was walking toward the pub, he observed Sko with blood on his face. At that time, defendant pulled up driving a white van, and the headlights were "beaming *** on Sko's face." Defendant "jumped out the van and just started running and shooting." McGee was approximately 10 feet away when defendant exited the van holding a black semiautomatic firearm, and he fired two or three shots toward a crowd of people. When defendant was running and shooting, McGee saw a body fall; defendant then ran past the person who fell.

¶ 11    After the shooting, McGee got into his car and drove to pick up defendant. McGee did not see a firearm when defendant entered his car; he saw defendant with a gun only when the car pulled up at the pub and defendant started shooting. Defendant asked McGee to take him out of town, so McGee took him to a motel in Davenport, Iowa. During the trip to the motel, defendant made a statement to McGee that "he couldn't believe that they provoked him."

¶ 12    Douglas Bailey, who was also at the pub, said he had observed the verbal altercation between Mixon and defendant. He said the altercation escalated and defendant struck Mixon with

a barstool, after which he left the pub. Bailey received a call from McGee telling him to step outside because "they [were] jumping on a guy named Sko." When Bailey went outside, he saw a white van pull up and "observed [defendant] get out [of] the van and open fire" with "a[n] automatic grayish looking" firearm. Defendant fired two or three shots toward the north. Concerned for his safety, Bailey was in a rush to leave. Bailey testified that "[t]here's no doubt in my mind that [defendant] shot the two to three rounds." He did not see anyone else in possession of a firearm or hear anyone else firing a weapon that night.

¶ 13    Gregory Bridges was at the pub on the night of the shooting. When he exited the pub, he saw a white van driving slowly through the parking lot. It made a sudden stop and defendant jumped out of it, with his hand near his waist area. He then raised and extended his arm, and Bridges saw a flash and smoke. Bridges said he heard "[m]aybe five or six" gunshots but he was not counting because he was traumatized. After the gunshots, the van left. Bridges did not see anyone else with a firearm.

¶ 14                            B. Motion for Mistrial

¶ 15    Defendant moved for a mistrial based upon the fact the State had not previously disclosed the oral statement he made to McGee about being provoked. Defense counsel argued that the statement was powerful because it ascribed a motive to his client. The State responded that it believed it first learned the information from McGee during a witness preparation session the previous day; counsel said he did not realize that it was not part of the statement McGee had given previously to detective Legate. The State advised the trial court that it was not "trying to hide anything" and had simply neglected to include it in an additional disclosure made the prior afternoon. The court noted that with a lay witness who lied to police for 45 minutes of an hour-long interview, there are bound to be things that come out during witness preparation that were not

- 4 -

previously disclosed to the police. The court ruled that it did not believe that the State's nondisclosure was purposeful and advised that it would give the defense an opportunity to recall McGee to further inquire into the matter, but it denied the motion for a mistrial.

¶ 16        The trial court instructed the jury that neither opening statements nor closing arguments are evidence and that any argument not based upon the evidence should be disregarded. It also instructed the jury that the State must prove that, during the commission of first degree murder, defendant was armed with a firearm and that, if proven, then it should return the verdict form so indicating. Further, the court instructed the jurors that it was for them to determine whether defendant made the statements attributed to him and what weight to give them.

¶ 17                          C. Verdict, Posttrial Motion, and Sentencing

¶ 18        In February 2019, the jury found defendant guilty of first degree murder, aggravated discharge of a firearm, and unlawful possession of a weapon by a felon, and it specifically found that defendant was armed with a firearm during the commission of first degree murder.

¶ 19        Defendant moved for a new trial arguing, *inter alia*, that the trial court (1) "allowed the State to proceed with a [UPWF] Count over objection" and that "[t]he introduction of the prior Felony was more prejudicial than probative" and (2) erred in denying the motion for mistrial. Trial counsel did not make any argument on these allegations during the hearing on the motion, and the court denied the motion.

¶ 20        Defendant was sentenced to consecutive terms of 10 years' imprisonment for possession of a weapon by a felon and 65 years' imprisonment for murder, which included a mandatory firearm enhancement. His motion to reconsider his sentence was denied.

¶ 21                                  D. Direct Appeal

¶ 22    On direct appeal, the appellate court affirmed, finding that: (1) the trial court did not err in denying defendant's motion for a mistrial; (2) defendant forfeited the argument that the first degree murder and UPWF charges should have been severed; (3) defense counsel did not provide ineffective assistance; (4) the State's purported misconduct does not require reversal; (5) cumulative error did not deprive defendant of his right to a fair trial; and (6) defendant's sentence was proper. *Kelly*, 2022 IL App (3d) 190375-U, ¶¶ 1, 73.

¶ 23                              E. Postconviction Petition

¶ 24    In December 2023, defendant filed his postconviction petition raising five general arguments relating to the propriety of various trial court rulings, assertions concerning ineffective assistance of trial and appellate counsel, and cumulative error. In February 2024, the trial court issued a written order summarily denying defendant's *pro se* postconviction petition at the first stage, finding that the "petition claiming denial of constitutional rights is frivolous or patently without merit." The court also found that defendant's "allegation of ineffective assistance of counsel does not make an arguable claim that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced."

¶ 25    This appeal followed, and OSAD was appointed to represent defendant on appeal.

¶ 26                              II. ANALYSIS

¶ 27    OSAD has filed a motion to withdraw from representation of defendant on appeal supported by a memorandum outlining why it has concluded that no non-frivolous issue could be raised in support of reversal. OSAD's brief examines multiple possible arguments that might conceivably be made in support of defendant's postconviction petition, but it concludes that each one lacks merit. The record demonstrates counsel provided defendant with a notice informing him of the motion to withdraw and that he could file a response. No response was filed.

¶ 28                    A. Rules Governing Withdrawal

¶ 29          "In a postconviction proceeding, there is no constitutional right to the assistance of counsel." *People v. Addison*, 2023 IL 127119, ¶ 19. "Instead, the right to counsel is a matter of legislative grace." (Internal quotation marks omitted.) *Id.* The Act provides indigent defendants, under appropriate circumstances, with a right to legal assistance in the prosecution of their petitions. See 725 ILCS 5/122-4 (West 2022). In so doing, the "Act provides for a reasonable level of assistance." *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). An attorney appointed to represent a postconviction petitioner need not advance "frivolous or patently nonmeritorious" claims, nor may the attorney ignore the good-faith obligations imposed by Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). *People v. Greer*, 212 Ill. 2d 192, 205 (2004).

¶ 30          The trial court here appointed OSAD to represent defendant on the instant appeal pursuant to Illinois Supreme Court Rule 607(a) (eff. Sept. 18, 2023), which gives certain indigent defendants the right to representation on appeal; Rule 607(a) is made applicable to appeals from dismissal of postconviction petitions by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).. Appointed counsel who finds no meritorious issue to raise in an appeal should properly seek leave to withdraw. See *People v. White*, 2020 IL App (4th) 160793, ¶¶ 42-57 (concluding that withdrawal from postconviction appellate representation is not governed by constitutional standards).

¶ 31                    B. Forfeiture and *Res Judicata*

¶ 32          OSAD has concluded that most of the claims stated in defendant's postconviction petition are either forfeited or barred by *res judicata.* Our supreme court has held that *res judicata* and forfeiture are proper bases for a trial court to summarily dismiss a postconviction petition at the first stage because "where *res judicata* and forfeiture preclude a defendant from obtaining

- 7 -

relief, such a claim is necessarily 'frivolous' or 'patently without merit.' " *People v. Blair*, 215 Ill. 2d 427, 445 (2005). The doctrine of *res judicata* bars postconviction petitioners from raising issues that were previously raised and decided on direct appeal, and the doctrine of forfeiture bars petitioners from raising issues that could have been raised on direct appeal but were not. *Id.* at 443-44. Here, these doctrines bar the consideration of all of defendant's claims aside from those involving the ineffective assistance of appellate counsel.

¶ 33        The issue of the State's failure to disclose defendant's statement about provocation as related by McGee that he was provoked and the failure to sever the UPWF and murder charges were addressed in the prior appeal and are, therefore, barred by *res judicata*. *Kelly*, 2022 IL App (3d) 190375-U, ¶¶ 30-37. We agree with OSAD that these do not present viable issues in the instant appeal.

¶ 34        Other arguments were not raised in the prior appeal but could have been, so they are forfeited. These include generally the following: (1) whether the trial court abused its discretion in allowing the constructive amendment of the indictment; (2) the failure to tender mitigating instructions; (3) issues relating to the jury selection process; and (4) whether trial counsel was ineffective in failing to raise these issues. Regarding the alleged jury selection process violations, these issues further include: (1) defendant's assertions of lack of racial diversity and African American representation on venire pool and jury; (2) denial of a motion for greater diversity in the venire and to strike the jury panel; (3) purported *Batson* violations; (4) the court's rulings on striking jurors for cause and forcing defendant to use a peremptory challenge; (5) Patricia Walton's purported bias; (6) violation of defendant's presumption of innocence due to him being seen being placed into a holding cell in handcuffs; and (7) trial counsel's failure to ask the court to inform the jury of the inter-racial nature of the crime and to question them regarding racial animus. We again

agree with OSAD that these were forfeited because they were not raised in the original appeal, so they do not present viable bases for postconviction relief.

¶ 35        Following application of forfeiture and *res judicata* to the issues defendant seeks to raise directly in his petition, the only question to be addressed is whether there is a viable argument that his appellate counsel in the direct appeal was ineffective for failing to raise certain arguments there.

¶ 36                    C. Ineffective Assistance of Appellate Counsel

¶ 37        OSAD has concluded that there is no viable issue that can be raised on appeal concerning the effectiveness of defendant's representation on his direct appeal; we agree. To prevail on a claim of ineffective assistance, a defendant must show both that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (1) it is arguable that counsel's performance fell below an objective standard of reasonableness and (2) it is arguable that the defendant was prejudiced. *Hodges*, 234 Ill. 2d at 17. Prejudice is established where "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Strickland*, 466 U.S. at 694; *People v. Domagala*, 2013 IL 113688, ¶ 36.

¶ 38        In his postconviction petition, defendant contended that his appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) constructive amendment of the indictment; (2) a challenge to the sufficiency of the evidence concerning transferred intent; (3) trial counsel's failure to tender a lesser-included jury instruction on involuntary manslaughter; (4) a failure to raise juror bias; (5) a failure to raise a *Brady* violation; and (6) failure to raise

severance of the charges against defendant. We address each point separately to show why we agree with OSAD that there is no viable issue regarding the effectiveness of defendant's appellate counsel on his direct appeal.

¶ 39    1. *Challenge to Jury Instruction as Amendment of the Indictment*

¶ 40    The original indictment charged first degree murder in three counts, each of which stated that "without lawful justification" defendant discharged a firearm in the direction of Jenni McGruder (1) "with the intent to kill or do great bodily harm to Jenni McGruder," (2) "knowing such act would cause the death of Jenni McGruder," and (3) "knowing such act created a strong probability of death or great bodily harm to Jenni McGruder." The jury instructions in this case utilized this same language as the indictment but added the phrase "or another" following the reference to Jenni McGruder.

¶ 41    Illinois law provides that once an indictment is returned by the grand jury, it may not be broadened through amendment except by the grand jury itself. *People v. Ross*, 395 Ill. App. 3d 660, 667 (2009). Under federal law, a jury instruction that digresses from the elements of the charged statute constructively amends the indictment and violates the fifth amendment's grand jury clause. *U.S. v. Trennell*, 290 F.3d 881, 887-88 (7th Cir. 2002); U.S. Const., amend. V. However, the fifth amendment requirement of a grand jury indictment is not applicable to state criminal proceedings. *People v. Redmond*, 67 Ill. 2d 242, 262 (1977) (citing *Hurtado v. California*, 110 U.S. 516, 535 (1884)); see *People v. Okoro*, 2022 IL App (1st) 201254, ¶ 29; *People v. Aranda*, 2024 IL App (4th) 210075-U, ¶ 102. Consequently, there is no viable issue about an improper "amendment" to the indictment that could have been raised in defendant's direct appeal.

¶ 42    The argument raised below in defendant's petition is more properly considered to be in the nature of a variance, *i.e.*, that there was a variance between the indictment and the

corresponding jury instruction. *Okoro*, 2022 IL App (1st) 201254, ¶ 32. "A variance between allegations in an indictment and proof at trial is fatal to a conviction if the variance is material and could mislead the accused in making his defense [citation] or expose him to double jeopardy." *Aranda*, 2024 IL App (4th) 210075-U, ¶ 103. *Aranda* also provides the following analysis which is helpful here.

> " 'A charging instrument is to be read as a whole, and where a statute is cited in a count, the statute and count are to be read together.' [citation omitted]. 'If the essential elements of an offense are properly charged but the manner in which the offense is committed is incorrectly alleged, the error is one of form.' " *Id.* ¶ 104.

¶ 43        In *Aranda*, the jury instruction included statutory language that was cited in the indictment but omitted from the indictment. Accordingly, the court concluded that any error was a matter of form, "and the variance between the indictment's language and the State's proof that defendant caused the drugs to be brought to Illinois was not fatal." *Id.* ¶ 105. It then stated, "we find nothing material about the variances here that could have misled defendant in making his defense or exposed him to double jeopardy. Thus, there was no error. Because there was no error, there likewise was no plain error or ineffective assistance of counsel." *Id.* ¶ 107.

¶ 44        In *Okoro*, the court found that "defendant had sufficient notice that any or all of the provisions of section 19-6 [of the Criminal Code of 2012 (720 ILCS 5/19-6 (West 2018))] were being raised in this case." *Okoro*, 2022 IL App (1st) 201254, ¶ 42. The court explained that the "home invasion statute details three ways in which a person can commit the offense; thus, any variance between the act named in the indictment and the means or manner by which defendant committed the act as proved at trial is not fatal." *Id.* Accordingly, *Okoro* concluded "there was no broadening of the possible bases for his conviction, as the indictment specifically stated that he

was charged with violation of section 19-6." *Id.*

¶ 45      A similar result occurred in *People v. Arndt*, 351 Ill. App. 3d 505, 511 (2004), where the court stated, "The ordinary meaning of the language of the indictment, considered with the language in section 11-6 [of the Criminal Code of 1961 (720 ILCS 5/11-6 (West 2002))], demonstrates that defendant was charged with soliciting 'someone' he believed to be under the age of 17." The court added, "in reading the language in the count and the statute together, we determine that the indictment's reference to a 'child he believed to be under the age of 17,' rather than 'one whom he believed to be a child,' was not material." *Id.* It further concluded that "any variance was not of such a character that it misled defendant in preparing his defense." *Id.*

¶ 46      Here, similar to *Aranda* and *Arndt*, the language added by the State's instruction was part of the statute cited in the indictment. Although the indictment did not include the language "or another," the statute cited therein (720 ILCS 5/9-1(a)(1) (West 2022)) did. The law is clear that the indictment and statutes cited within are to be read together. *Arndt*, 351 Ill. App. 3d at 518. Accordingly, there was no error in giving the instruction. Where there is no underlying error, appellate counsel cannot be ineffective for failing to raise the issue on direct appeal. *People v. Easley*, 192 Ill. 2d 307, 329 (2000). If the essential elements of an offense are properly charged but the manner in which the offense is committed is incorrectly alleged, the error is one of form. *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 67. Here, his counsel was clearly on notice of the additional language, so this did not create a viable issue for defendant's appellate counsel in the direct appeal, and therefore OSAD has no basis to argue prior counsel's ineffectiveness.

¶ 47      Moreover, OSAD is correct in concluding that it could not argue that defendant was prejudiced by the State failing to prove the identity of the "other" person. The statute merely provides that liability stems from the defendant "know[ing] that such acts create a strong

- 12 -

probability of death or great bodily harm to that individual or another"; it does not require that the "other" individual be named or identified. Likewise, the second portion of the second proposition of the murder instruction merely requires proof that the defendant "knows that such acts create a strong probability of death or great bodily harm to that individual or another." Finally, defendant's petition does not argue that the variance could expose him to double jeopardy, and we agree with appellate counsel that it could not. Defendant's indictment specified his name, the date and place of the offense, and the statutory provision alleged to have been violated. Indeed, the indictment set forth—in the language of the statute—the nature and elements of the offense charged. 725 ILCS 5/111-3(a) (West 2022). Should any future prosecution be attempted, the prior prosecution on the same facts could be proved by the record.

¶ 48        Where a criminal offense can be committed by several acts, a variance between the act named in the indictment and the act proved is not necessarily fatal. *People v. Maxwell*, 148 Ill. 2d 116, 137 (1992). The added language, "or another," is found in the pattern jury instruction and, more importantly, in the first degree murder statute. 720 ILCS 5/9-1(a) (West 2022). The record fails to show how this variance could have prejudiced defendant in the preparation of his defense. Thus, there was no error here by the appellate counsel in failing to raise the issue on direct appeal, and we agree with OSAD that there is no viable issue in this regard that can be raised in the instant appeal.

¶ 49        2. *Failure to Challenge the Sufficiency of Evidence*

¶ 50        Next, OSAD examined whether defendant's appellate counsel on direct appeal was ineffective for failing to challenge the sufficiency of the evidence, arguing that the State failed to prove beyond a reasonable doubt that he was the shooter in the alleged crime and further failed to prove every element of first degree murder. Of course, "it is well established that sufficiency of

the State's evidence is not a proper issue for a postconviction proceeding." *People v. Dixon*, 2022 IL App (1st) 200162, ¶ 45. The only lens through which we can examine the issue is to assess whether OSAD can plausibly argue that appellate counsel was ineffective for failing to raise the sufficiency of the evidence on direct appeal.

¶ 51    A defendant who contends that appellate counsel rendered ineffective assistance (*e.g.*, by failing to argue a particular issue) must show that appellate counsel's failure to raise the issue was objectively unreasonable and prejudiced the defendant. *People v. Simms*, 192 Ill. 2d 348, 362 (2000) (citing *People v. West*, 187 Ill. 2d 418, 435 (1999)). Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit unless counsel's appraisal of the merits is patently wrong. *Easley*, 192 Ill. 2d at 329 (2000); *West*, 187 Ill. 2d at 435 (1999). Thus, the inquiry as to prejudice requires that the reviewing court examine the merits of the underlying issue (*People v. Mack*, 167 Ill. 2d 525, 534 (1995)); a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal. *Easley*, 192 Ill. 2d at 329.

¶ 52    Here, the uncontradicted evidence was that defendant intentionally fired a gun into a crowd of people. *Kelly*, 2022 IL App (3d) 190375-U, ¶ 32. As the appellate court stated on direct review, "the evidence in this case is not close." *Id.* Indeed, three witnesses "positively and unequivocally identified defendant as the shooter," and a fourth witness "did all but explicitly identify defendant as the shooter. Moreover, the five witnesses to the shooting gave mostly consistent accounts of the shooting." *Id.* We cannot say that appellate counsel's failure to challenge the sufficiency of the evidence on direct appeal was objectively unreasonable or that it prejudiced defendant. Accordingly, we find that OSAD could not advance any meritorious argument that appellate counsel was ineffective for failing to raise the sufficiency of the evidence on direct

- 14 -

appeal.

¶ 53                    3. *Failure to Tender Lesser-Included Offense Instructions*

¶ 54          Defendant's petition contends that appellate counsel was ineffective for failing to argue that trial counsel was ineffective by failing to request a proper instruction on *mens rea*, *i.e.*, instructions on the lesser-included offenses of second degree murder and involuntary manslaughter. OSAD contends that this issue lacks merit, and we agree.

¶ 55                    a. Lesser-included Instruction on Second Degree Murder

¶ 56          Section 9-2(a) of the Criminal Code of 2012 provides, in pertinent part, as follows:

        "A person commits the offense of second degree murder when he or she commits the offense of first degree murder *** and either of the following mitigating factors are present: (1) at the time of the killing he or she is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he or she negligently or accidentally causes the death of the individual killed." 720 ILCS 5/9-2(a)(1) (West 2022).

This subsection is frequently referred to as addressing the concept of provocation. According to subsection 9-2(b), "[s]erious provocation is conduct sufficient to excite an intense passion in a reasonable person." *Id.* § 9-2(b).

¶ 57          We begin by noting that second degree murder is not a lesser-included offense of first degree murder. *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995). Instead, it is more accurately described as a "lesser mitigated offense" of first degree murder. *Id.*; *People v. Wilmington*, 2013 IL 112938, ¶ 48. Here, defendant's petition asserted that trial counsel should have tendered an instruction on second degree murder because there was some evidence in the record suggesting

that he was provoked, specifically McGee's testimony that defendant told him, "[H]e couldn't believe that they provoked him."

¶ 58       However, serious provocation will only constitute a mitigating factor if the killing occurs before the defendant has had enough time for tempers to cool. *People v. Hayes*, 2022 IL App (4th) 210409, ¶ 56; *People v. McDonald*, 63 Ill. App. 2d 475, 479 (1965). Whether a sufficient cooling-off period existed depends upon the magnitude of the provoking act and the degree to which passions have been aroused in the defendant. *People v. Hudson*, 71 Ill. App. 3d 504, 511 (1979). Here, the evidence shows that defendant left the pub after his initial altercation with Mixon and later returned with a gun, firing into a group of people. We cannot say that defendant's isolated reference to being "provoke[d]" as testified to by McGee, which occurred sometime after the initial altercation, rose to the level of a provocation sufficient to warrant instructing the jury on second degree murder. Thus, we agree with OSAD that it could not advance a meritorious argument that appellate counsel was ineffective for failing to argue on direct appeal that trial counsel rendered ineffective assistance by not tendering the instruction.

¶ 59       b. Lesser-included Instruction on Involuntary Manslaughter

¶ 60       OSAD has concluded that it cannot advance a meritorious argument that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in failing to seek the pattern jury instruction for involuntary manslaughter. According to Illinois Pattern Jury Instructions, Criminal, No. 7.07 (approved Jan. 30, 2015) (hereinafter IPI Criminal No. 7.07), which defines involuntary manslaughter, "A person commits the offense of involuntary manslaughter when he unintentionally causes the death of an individual [without lawful justification] by acts which are performed recklessly and are likely to cause death or great bodily harm to another." Defendant's petition made this assertion, in part, based on the trial court's

statement during sentencing that defendant's conduct was "reckless."

¶ 61         Illinois law provides that "[a] defendant is entitled to a lesser-included offense instruction only if the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *People v. Beasley*, 2014 IL App (4th) 120774, ¶ 14 (quoting *People v. Medina*, 221 Ill. 2d 394, 405 (2006)). The primary difference between involuntary manslaughter and first degree murder is the mental state accompanying the conduct resulting in the victim's death. *People v. Jackson*, 372 Ill. App. 3d 605, 613 (2007). "For first degree murder, the defendant knows his acts 'create a strong probability of death or great bodily harm.' " *Id.* (quoting 720 ILCS 5/9-1(a)(2) (West 2000)). For "involuntary manslaughter the defendant performs acts 'likely to cause death or great bodily harm' and he performs those acts 'recklessly.' " *Id.*

¶ 62         Although involuntary manslaughter is a lesser-included offense of first degree murder, an involuntary manslaughter instruction is *not* warranted where a defendant voluntarily and willfully commits an act which has a natural tendency to cause death or great bodily harm. *People v. Hennon*, 228 Ill. App. 3d 759, 765 (1992). In *Hennon*, the defendant was charged with accountability in the shooting of two others. The evidence established that the shooter "intentionally shot in the direction of the victims while sitting in the passenger seat of defendant's automobile as defendant slowed travel." *Id.* at 765-66. The court stated that, "[i]n view of that evidence, it was not improper for the trial judge to refuse to instruct the jury regarding involuntary manslaughter." *Id.* The same result occurred in *People v. Mimms*, 312 Ill. App. 3d 226 (2000), where the defendant fired shots at a residence he knew to be occupied, killing one of the occupants. The court stated that, "Defendant is presumed to know that his firing a gun at an occupied home 'create[d] a strong probability of death or great bodily harm' to the occupants of that home, which

- 17 -

included the victim." *Id.* at 231 (quoting 720 ILCS 5/9-2(a)(2) (West 1996) and *People v. Lake*, 298 Ill. App. 3d 50, 54 (1998) (involving a defendant firing a gun into a building he knew was occupied.)); see *People v. Washington*, 257 Ill. App. 3d 26, 35 (1993).

¶ 63        Here, as we have noted, defendant fired two or three shots into a crowd of people in a parking lot. There is no suggestion that he did not know what he was shooting at or that he was acting recklessly. He knowingly and voluntarily committed an act that was not just "likely" to result in death or great bodily injury to others, but there was a strong probability that it would do just that. We conclude that there was no justification for trial counsel to have tendered a lesser-included instruction on involuntary manslaughter, so we agree with OSAD that there is no meritorious argument that appellate counsel was ineffective for not arguing on direct appeal that trial counsel was ineffective in this regard.

¶ 64                                4. *Juror Bias*

¶ 65        OSAD has concluded that there is no merit to the contention in defendant's petition that appellate counsel was ineffective for failing to challenge on direct appeal the potential bias of juror Patricia Walton. The record plainly refutes defendant's arguments about Walton's purported bias. Although Walton initially stated that she was not sure that she could put aside what she had read or heard about the case, she went on to state that she "could be fair" and "could be open minded" about the case. Moreover, when asked by the trial court whether she could set aside what she had read or hear about the case and render a verdict—guilty or not guilty—in accordance with the evidence, she answered, "Yes." Appellate counsel is not ineffective where the underlying claim lacks merit. *People v. Johnson*, 183 Ill. 2d 176, 187 (1998). We agree with OSAD that it could make no meritorious argument that appellate counsel was ineffective for failing to raise juror bias as an issue in defendant's direct appeal.

¶ 66                                5. Brady *Violation*

¶ 67        OSAD has also concluded that there is no merit to the argument raised in defendant's postconviction petition concerning appellate counsel's failure to raise on direct appeal a *Brady* violation concerning McGee's testimony that defendant said he was provoked. In *Brady v. Maryland*, 373 U.S. 83, 88 (1963), the United States Supreme Court held that the prosecution violates an accused's constitutional right to due process of law by failing to disclose evidence favorable to the accused and material to guilt or punishment. *People v. Harris*, 206 Ill. 2d 293, 311 (2002) (citing *Brady*, 373 U.S. at 87). However, the issue of a discovery violation concerning McGee's statement that defendant said he was provoked was, in fact, raised and decided on direct appeal. *Kelly*, 2022 IL App (3d) 190375-U, ¶¶ 30-32. Appellate counsel cannot be ineffective for failing to raise an issue which was, in fact, raised, so we agree with OSAD that the issue lacks merit.

¶ 68                                6. *Severance of Charges*

¶ 69        Finally, OSAD finds no merit to the argument in defendant's petition contending that his appellate counsel on the direct appeal was ineffective for "failing to properly raise the severance issue." That issue, too, was litigated on direct appeal (*Kelly*, 2022 IL App (3d) 190375-U, ¶¶ 34-37 ("Defendant argues that the court erred in allowing the State to try him for UPWF [720 ILCS 5/24-1(a) (West 2018)] and murder in the same trial because he was prejudiced by the jury being informed of his prior felony conviction.")). Although the original appellate court decision found the issue had been forfeited, we proceeded to address it in the alternative and concluded that "we would find any such error harmless." *Id.* ¶ 37. We conclude that the issue was raised and decided in defendant's direct appeal, so OSAD is correct in concluding that appellate counsel cannot have been ineffective for failing to raise it.

¶ 70                              D. Cumulative Error

¶ 71          OSAD reviewed the cumulative error argument made in defendant's petition and again finds it lacking in merit. Cumulative error can be raised in a postconviction petition, either collectively with other issues in the petition or as part of an argument that appellate counsel was ineffective. See, *e.g.*, *People v. White*, 2024 IL App (5th) 210103-U, ¶¶ 40-41; *People v. Jackson*, 205 Ill. 2d 247, 282 (2001). However, it is well settled there generally is no cumulative error where the alleged errors do not amount to reversible error on any individual issue. *People v. Mays*, 2023 IL App (4th) 210612, ¶ 114; *People v. Caffey*, 205 Ill. 2d 52, 117-18 (2001) (stating where no error occurred at all, or any error that may have occurred did not rise to the level of plain error, the defendant was not entitled to a new trial on the basis of cumulative error). Because we have found no error, and the only error found on direct appeal—the discovery violation of not tendering McGee's testimony about defendant being provoked—was found to be harmless (*Kelly*, 2022 IL App (3d) 190375-U, ¶ 43), there can be no cumulative error. "[A] defendant in a criminal case is entitled to a fair trial, not a perfect one." *People v. Ruiz*, 94 Ill. 2d 245, 260 (1982); see *People v. Brown*, 2023 IL App (4th) 220476, ¶ 38. We agree with OSAD that there is no viable issue that any of the issues raised by defendant's petition—none of which individually constituted error—give rise to cumulative error.

¶ 72                              III. CONCLUSION

¶ 73          For the foregoing reasons, we grant appellate counsel's motion to withdraw as counsel because no meritorious argument can be raised on appeal, and we affirm the trial court's judgment.

¶ 74          Affirmed.